IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DeWAYNE THOMPSON,<br><br>            Plaintiff,<br><br>       v.<br><br>C. INGWERSON, et al.,<br><br>            Defendants. | No.  2:25-CV-0167-WBS-DMC-P<br><br><br>FINDINGS AND RECOMMENDATIONS |

   Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the Court is Plaintiff's first amended complaint.  See ECF No. 6.[1]

   The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C. § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody.  See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can

---

[1] Plaintiff titled this "supplemental complaint," and it was docketed twice, ECF Nos. 6 and 9. Both ECF No. 6 and 9 are the same document. Given Plaintiff previously filed an original complaint, ECF No. 1, the Court will address ECF No. 6 as Plaintiff's first amended complaint.

1

1  be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See
2  28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that
3  complaints contain a ". . . short and plain statement of the claim showing that the pleader is
4  entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,
5  concisely, and directly. See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to
6  Fed. R. Civ. P. 8(e)(1)). These rules are satisfied if the complaint gives the defendant fair notice
7  of the plaintiff's claim and the grounds upon which it rests. See Kimes v. Stone, 84 F.3d 1121,
8  1129 (9th Cir. 1996). Because Plaintiff must allege with at least some degree of particularity
9  overt acts by specific defendants which support the claims, vague and conclusory allegations fail
10 to satisfy this standard. Additionally, it is impossible for the Court to conduct the screening
11 required by law when the allegations are vague and conclusory.

### I. PLAINTIFF'S ALLEGATIONS

Plaintiff filed the first amended complaint on June 2, 2025. See ECF No. 6. Plaintiff names the following as defendants: (1) C. Ingwerson; (2) J. Perry; (3) C. Dore; (4) N. St. Andre; (5) R. Rosas; (6) Butterfield; and (7) John Doe J. McPhetridge,[2] all correctional officers at High Desert State Prison (HDSP) in Susanville. See id. pgs. 2-3.

Plaintiff asserts that that Defendants St. Andre, Dore, Perry, Rosas, Butterfield, and Ingwerson retaliated against Plaintiff for filing grievances, in violation of Plaintiff's First and Eighth Amendment rights. See id. at 4. Plaintiff claims that Defendants called Plaintiff a "snitch and pedophile in the presence of known dangerous inmates in order to subject [Plaintiff] to physical harm." Id. Plaintiff alleges that during his time at HDSP, he submitted numerous grievances against Defendants Perry and St. Andre regarding deprivation of food due to poor supervision of inmate dining workers. Id. Plaintiff contends that between November 3, 2024, and November 22, 2024, Defendants St. Andre, Dore, and Perry informed other prisoners that

---

[2]   Plaintiff refers to this Defendant as John Doe and states his name was "withheld due to code of silence." Id. at 19. However, it appears Plaintiff later learned the name of the Defendant is McPhetridge because Plaintiff added "McPhetridge" to every reference to "John Doe" within the complaint. Therefore, this Court will refer to Defendant John Doe as Defendant McPhetridge.

2

1    Plaintiff filed grievances alleging that dining workers were stealing apples to make pruno
2    (homemade alcohol that can be made in jails and prisons). See id. at 5. Plaintiff asserts that this is
3    an inaccurate characterization of his reports as his grievances only asserted that workers were
4    "'stealing food'". See id. at 7. According to Plaintiff, Defendants' actions led prisoners to tell
5    Plaintiff to "cool it" on the grievances and threaten that if Plaintiff did not, he would be attacked.
6    See id. at 5. According to Plaintiff, these threats caused Plaintiff to be "agoraphobic or feared to
7    go in public," fearing "bodily attack." Id. at 6.
8         Plaintiff alleges that on December 10, 2024, Defendant Rosas called Plaintiff a
9    pedophile in front of other inmates. See id. at 10. Plaintiff contends that Plaintiff subsequently
10   threatened to sue Defendant Rosas, and Defendant Rosas responded by loudly saying that
11   Defendant Rosas had read Plaintiff's grievances and that it "sounds like they need to do a cell
12   search for contraband." Id. Plaintiff contends that Defendant Rosas' purpose was to have Plaintiff
13   attacked and that it resulted in inmates "threatening to attack" Plaintiff. Id. Plaintiff contends that
14   on the same date, two prisoners told Plaintiff that Defendants Perry, St. Andre, and Rosas had
15   informed them that Plaintiff reported the prisoners for smuggling drugs into the building. See id.
16   at 7. According to Plaintiff, the inmates said that they would attack Plaintiff in the prison yard.
17   See id. Plaintiff alleges that on December 11, 2024, an inmate attacked Plaintiff, leaving him with
18   a black eye, and threatened that more brutal attacks would follow. See id. at 8. According to
19   Plaintiff, the inmate who attacked him "socialized with" the inmates who previously threatened
20   Plaintiff. Id. Plaintiff contends that he thereafter refused to attend yard release for fear of physical
21   assault. See id. at 8-9.
22        Plaintiff contends that on December 18, 2024, Defendants Ingwerson, Dore, St.
23   Andre, and Butterfield began a harassment campaign against Plaintiff. See id. at 11. According to
24   Plaintiff, on December 18, 2024, Defendant Ingwerson told a passing inmate that Plaintiff had
25   reported the inmate for having drugs in his cell. See id. Plaintiff contends that on December 19,
26   2024, an inmate informed Plaintiff that Defendant Dore told the inmate that Plaintiff was
27   "snitching on inmates dealing drugs in the building." Id. at 11-12.
28   ///

3

1              Plaintiff alleges that on December 23, 2024, Defendant Dore publicly read out
2    loud from a complaint form that Plaintiff wrote, but Defendant Dore inserted his own words that
3    did not appear in the report, including that "Cell 118 and 216 have dope in it." See id. at 22.
4    According to Plaintiff, Defendant St. Andre then searched those cells and informed the occupants
5    that the search was due to Plaintiff's report. See id. Plaintiff further alleges that on the same day,
6    Defendant Butterfield announced on the prison PA system that "'yard is cancelled. Everybody
7    lock it up due to [Plaintiff] not coming out his cell to talk to sergeant for having safety concerns
8    due to snitching.'" See id. at 12. Plaintiff further alleges that shortly after this announcement, a
9    prisoner came to Plaintiff's cell with pens, and said "Dore, St. Andre, and Ingwerson said early x-
10   mas. Here are some snitching sticks." See id.

11             Plaintiff alleges that on December 27, 2024, Defendant Ingwerson announced
12   there would be no yard release until Plaintiff left his cell to retrieve his medication. See id. at 13.
13   According to Plaintiff, multiple inmates then came to Plaintiff's cell and demanded Plaintiff
14   retrieve his medication so they could get yard release. See id. Plaintiff contends that he complied,
15   but that Ingwerson subsequently announced to the building that Plaintiff had not actually
16   retrieved his medication, and that yard release was therefore cancelled. See id. at 14. Plaintiff
17   contends that the purpose of Defendants' acts was to "harass Plaintiff and have him targeted for
18   attack." Id. Plaintiff asserts that these actions caused Plaintiff "to have panic attacks on the daily"
19   and fear his belongings would be discarded by Defendants if Plaintiff if Plaintiff was transferred.
20   See id.

21             Plaintiff contends that Defendants St. Andre and Perry retaliated against Plaintiff
22   for filing grievances by denying Plaintiff medical care, feeding him contaminated food, falsifying
23   rule violation reports, and using excessive force in violation of Plaintiff's First Amendment and
24   Eighth Amendment rights. See id. at 15. According to Plaintiff, on October 11, 2024, Plaintiff
25   received ankle fusion surgery on his right ankle. See id. at 16. Plaintiff alleges that on October 26,
26   2024, while in Plaintiff's cell, Plaintiff requested medical attention from Defendant St. Andre due
27   to serious swelling and bleeding from sutures. See id. Plaintiff contends that Defendant St. Andre
28   told Plaintiff he was busy, and that Plaintiff should "submit a 602 (grievance) like he do (sic) with

1  everything else." See id. Plaintiff alleges that another officer heard Plaintiff's request and
2  "swiftly" provided medical attention to Plaintiff. Id.  Then, Plaintiff asserts that Defendant St.
3  Andre wrote a Rule Violation Report (RVR) citing Plaintiff for disruption of orderly facility
4  operation. See id. According to Plaintiff, Defendant St. Andre informed Plaintiff that he filed the
5  RVR because of Plaintiff's 602 reports. See id.

6  Additionally, Plaintiff alleges that on November 18, 2024, Defendant Perry issued
7  Plaintiff a food tray without fruit, tortilla, or cheese. See id. at 17. Plaintiff asserts that this was in
8  response to Plaintiff "exercising his constitutional right to access… [the] remedial system,"
9  referring to Plaintiff's past grievances against Defendant Perry regarding Defendant Perry's
10 supervision of dining workers. See id. at 15. Plaintiff alleges that when Plaintiff said he would file
11 a grievance against Defendant Perry, Defendant Perry responded that he would file a RVR and
12 cite Plaintiff for disrespect which could result in Plaintiff losing his "entertainment amenities."
13 See id. at 17. Plaintiff further alleges that on November 27, 2024, Defendant Perry used his hands
14 to "smash[] and crumble[]" Plaintiff's food before placing it on Plaintiff's food tray, and also
15 placed a beetle in Plaintiff's food. Id. Plaintiff asserts that this adverse act was in response to
16 Plaintiff's past grievances against Defendant Perry. See id. at 15.

17 Plaintiff alleges that on November 27, 2024, Defendant Perry asked Plaintiff to
18 place all of Plaintiff's weight on Plaintiff's injured leg during a weapons check. See id. at 18.
19 According to Plaintiff, Plaintiff informed Defendant Perry that this order went against the advice
20 of Plaintiff's doctor for post-surgery recovery and would injure his healing ankle. See id. Plaintiff
21 alleges that Defendant Perry nonetheless ordered Plaintiff to stand on Plaintiff's ankle, and
22 Defendant Perry stated that if Plaintiff did not comply, Defendant would "write him up." See id.
23 Plaintiff contends that he complied, which caused "excruciating pain in his right ankle." See id.

24 Next, Plaintiff asserts that Defendant Perry threatened to move Plaintiff because
25 Defendant Perry was "tired of" Plaintiff's grievances. See id. at 19. Plaintiff contends that
26 Plaintiff then told Defendant Perry he would not move. See id. at Defendant Perry then filed a
27 RVR against Plaintiff "for refusing assigned housing." Id. Plaintiff contends his refusal to move
28 did not give rise to such RVR because he was already properly housed and Plaintiff's removal

5

1    "did not delay Perry in his duty." Id.

2            Plaintiff asserts that on December 23, 2024, Defendant McPhetridge filed multiple
3    RVRs against Plaintiff in retaliation for Plaintiff's threat that he would file grievances. See id. at
4    19. According to Plaintiff, the first RVR (for battery) was dismissed, and Defendant McPhetridge
5    subsequently filed a RVR for delaying a peace officer in his duty. See id. Plaintiff further
6    contends that on the same date, Defendant McPhetridge undid the safety straps that secured
7    Plaintiff to a gurney so that Plaintiff could sit up, which Plaintiff claims resulted in Plaintiff
8    falling off the gurney and injuring his arm and knuckle. See id. at 20. Plaintiff asserts that medical
9    staff, who are not named as defendants, stated Plaintiff's vital signs were good and released
10   Plaintiff, despite Plaintiff's elevated vitals and panic attacks. See id.

11           Plaintiff contends that Defendants Dore and Ingwerson retaliated against Plaintiff
12   for filing grievances by vandalizing Plaintiff's cell and disposing of Plaintiff's personal property
13   in violation of Plaintiff's First Amendment rights. See id. at 22. Plaintiff alleges that on
14   December 23, 2024, Defendants Dore and Ingwerson arrived at Plaintiff's cell with a cell search
15   receipt. See id.  Plaintiff contends that Defendant Dore told him "It's show time. You want to
16   stick it to us, we mightest (sic) well go all out and stick it to you." Id.  Plaintiff asserts that after
17   Defendant Ingwerson ordered Plaintiff to comply with a search, Defendant Ingwerson "let
18   Plaintiff know that at High Desert they shoot niggers for target practice." Id. at 23. According to
19   Plaintiff, Defendants Dore and Ingwerson then disposed of Plaintiff's personal items including
20   toiletries, pain medication, and medical equipment, and did not report or process all these items or
21   provide Plaintiff with a form to have his property returned. See id. at 23. Plaintiff contends that
22   cell searches cannot be used as a punishment and Defendants conducted this search in violation of
23   that policy. See id. at 22 According to Plaintiff, Defendant Ingwerson also confiscated and
24   destroyed a legal file relating to another civil action. See id. Plaintiff alleges that Defendant
25   Ingwerson told Plaintiff that Plaintiff "could not have the file because it was a lawsuit against
26   officers." See id. at 23. Then, Plaintiff contends that Defendant Dore read Plaintiff's "legal
27   journal" and, while reading, spoke "out loud in his own words . . . as it he was reading it from
28   Plaintiff's journal." Id. Plaintiff asserts that when he returned to his cell, he found the cell to be

6

1   "ridiculously vandalized" with canteen goods "busted open and scattered throughout cell, along
2   with [Plaintiff's] personal and legal documents." Id. at 24.

3         Next, Plaintiff contends that Defendant St. Andre retaliated against Plaintiff for
4   filing grievances by disposing of Plaintiff's personal property in violation of Plaintiff's First
5   Amendment rights. See id. at 25. Plaintiff alleges that on November 18, 2024, Defendants St.
6   Andre and Perry stated that Plaintiff would "lose his property if the time comes for [Defendants]
7   to pack." See id. at 6. Plaintiff asserts that, on January 17, 2025, Plaintiff notified other
8   corrections officers of Plaintiff's suicidal ideations and "reported of having safety concerns due to
9   Defendant labeling [Plaintiff] a snitch." Id. at 25. Plaintiff asserts that he was therefore transferred
10  to the enhanced outpatient program for care. See id. Plaintiff alleges that while he was in that
11  program, Defendant St. Andre collected and inventoried Plaintiff's property from Plaintiff's cell.
12  See id. Plaintiff contends that when Plaintiff was reissued his property on February 4, 2025, it
13  was missing $240 in canteen goods, as well as Plaintiff's tablet, legal educational books, legal
14  journal and poem composition books, photo album, dictionaries, and shoes. See id. at 26. Plaintiff
15  further asserts that papers were taken out of their envelopes and folders, such papers were "mixed
16  together," Plaintiff's television screen was broken, and Plaintiff's photo album was "tore (sic)
17  into parts." Id. According to Plaintiff, when Plaintiff complained to Defendant St. Andre,
18  Defendant St. Andre replied to Plaintiff "'Don't you hate it when I answer your 602', which
19  Plaintiff interpreted to mean that [Defendant] St. Andre" had taken Plaintiff's property in
20  retaliation for Plaintiff filing grievances (602 forms). See id. at 27.

21        Plaintiff contends he was subsequently transferred out of this facility on March 11,
22  2025, "due to safety concerns and confidential information that inmates [] believed [Plaintiff] was
23  snitching." Id. Plaintiff asserts that Defendant St. Andre did not return Plaintiff's confiscated
24  property prior to his transfer nor ensure such property was mailed to Plaintiff at his new facility.
25  See id.
26  / / /
27  / / /
28  / / /

## II.  DISCUSSION

Plaintiff's first amended complaint gives rise to a number of cognizable claims, described in detail below, and the undersigned will recommend this action proceed on those claims. However, Plaintiff fails to adequately allege a medical needs claim against Defendant St. Andre and therefore, the undersigned will recommend dismissal of that claim.

Plaintiff's allegations give rise to cognizable retaliation claims against Defendants St. Andre, Dore, and Perry retaliated against Plaintiff by telling other inmates that Plaintiff reported dining workers for stealing apples to make homemade alcohol. Such retaliation was allegedly in response to grievances Plaintiff filed, and as such gives rise to a cognizable claim. Further, Plaintiff states a cognizable claims against defendant St. Andre for writing a false RVR against Plaintiff on October 26, 2024, in response to Plaintiff's grievances; against Defendant Perry for providing a deficient food tray to Plaintiff and threatening to write an RVR against Plaintiff on November 18, 2024, in response to Plaintiff's statement that he would file a grievance for a deficient food tray; against Defendant Perry for using his hands to smash Plaintiff's food on November 27, 2025, in response to Plaintiff filing grievances against Defendant Perry; against Defendant Rosas for threatening to do a cell search on December 10, 2024, after reading Plaintiff's grievances; against Defendant McPhetridge for filing a false RVR against Plaintiff on December 23, 2025, in response to Plaintiff's statement that he would file a grievance against medical staff; against Defendants Dore and Ingwerson for conducting a retaliatory search of Plaintiff's cell, disposing of Plaintiff's personal items, and vandalizing his cell on December 23, 2024, in response to grievances Plaintiff filed; and Defendant St. Andre for disposing of Plaintiff's personal property sometime between January 17, 2025, and February 4, 2025, in response to grievances Plaintiff filed.

Plaintiff's allegations additionally give rise to Eighth Amendment safety claims against: Defendants St. Andre, Dore, and Perry for telling other inmates Plaintiff reported dining workers for stealing fruit to make homemade alcohol; and similar claims against Defendant Rosas for calling Plaintiff a pedophile and loudly asserting that Plaintiff reported cells containing contraband in front of other inmates on December 10, 2024; against Defendants Perry and St.

1  Andre for telling other inmates that Plaintiff reported the inmates for smuggling drugs into the
2  building, which Plaintiff learned of on December 10, 2024; against Defendant Ingwerson for
3  telling another inmate that Plaintiff reported the inmate for having drugs in his cell on December
4  18, 2024; against Defendant Dore and St. Andre for reading out loud and in front of other inmates
5  from Plaintiff's complaint, claiming that it reported specific cells for drug possession and telling
6  inmates that their cells were being searched due to Plaintiff's complaints on December 23, 2024;
7  against Defendant Ingwerson for announcing yard release was cancelled due to Plaintiff's failure
8  to retrieve his medication on December 27, 2024, for the purpose of having Plaintiff "targeted for
9  attack;" and against Defendant Butterfield for announcing on the prison PA system that yard was
10 cancelled due to Plaintiff's fear of being attacked "due to snitching" on December 23, 2024.

   Finally, Plaintiff's allegations give rise to Eighth Amendment medical needs claims against Defendant Perry for forcing Plaintiff to place all his weight on an injured leg with deliberate indifference to Plaintiff's injury on November 27, 2024, and against Defendant McPhetridge for undoing the safety straps that secured Plaintiff to a gurney with deliberate indifference to Plaintiff's medical condition, which led to Plaintiff falling from the gurney and injuring his arm and knuckle on December 23, 2024.

   However, as explained further below, Plaintiff's claim against Defendant St. Andre for denial of medical attention is not cognizable and accordingly the undersigned will recommend dismissing that claim.

   **A.      Medical Needs**

   The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy,

9

1  801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when
2  two requirements are met: (1) objectively, the official's act or omission must be so serious such
3  that it results in the denial of the minimal civilized measure of life's necessities; and (2)
4  subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of
5  inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison
6  official must have a "sufficiently culpable mind."  See id.

   Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment.  See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837.  This applies to physical as well as dental and mental health needs.  See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982).  An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994).  Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain.  See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

   The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns.  See McGuckin, 974 F.2d at 1060.  Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs.  See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  The complete denial of medical attention may constitute deliberate indifference.  See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.  Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.

1       Negligence in diagnosing or treating a medical condition does not, however, give

2 rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a

3 difference of opinion between the prisoner and medical providers concerning the appropriate

4 course of treatment does not generally give rise to an Eighth Amendment claim. See Jackson v.

5 McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). However, a claim involving alternate courses of

6 treatment may succeed where the plaintiff shows: (1) the chosen course of treatment was

7 medically unacceptable under the circumstances; and (2) the alternative treatment was chosen in

8 conscious disregard of an excessive risk to the prisoner's health. See Toguchi v. Chung, 391 F.3d

9 1051, 1058 (9th Cir. 2004).

10       Plaintiff asserts that on October 26, 2024, Defendant St. Andre denied Plaintiff

11 medical attention. However, Plaintiff contends that another guard "swiftly" provided Plaintiff

12 with the medical attention Plaintiff requested. Therefore, Plaintiff cannot show he was completely

13 denied medical care nor that medical care was delayed due to Defendant St. Andre's refusal.

14 Therefore, the undersigned will recommend dismissal as to that claim.

### III. CONCLUSION

Based on the foregoing, the undersigned recommends as follows:

1. That this action proceed on Plaintiff's first amended complaint, ECF No. 6, as to the cognizable claims identified herein and as follows:

<u>Retaliation claims against</u>: Defendants St. Andre, Dore, and Perry for telling other inmates Plaintiff reported dining workers for stealing apples to make homemade alcohol; Defendant St. Andre for writing a false RVR against Plaintiff on October 26, 2024; Defendant Perry for providing a deficient food tray to Plaintiff and threatening to write a RVR against Plaintiff on November 18, 2024; Defendant Perry for using his hands to smash Plaintiff's food on November 27, 2025; Defendant Rosas for threatening to do a cell search on December 10, 2024; Defendant McPhetridge for filing a false RVR against Plaintiff on December 23, 2025; Defendants Dore and Ingwerson, for conducting a retaliatory search of Plaintiff's cell, disposing of Plaintiff's personal items, and vandalizing his cell on December 23, 2024; and Defendant St. Andre for disposing of Plaintiff's personal property sometime between January 17, 2025, and February 4, 2025.

///

///

11

<u>Eighth Amendment safety claims against</u>: Defendants St. Andre, Dore, and Perry for telling other inmates Plaintiff reported dining workers for stealing fruit to make homemade alcohol; Defendant Rosas for calling Plaintiff a pedophile and asserting that Plaintiff reported cells containing contraband in front of other inmates on December 10, 2024; Defendants Perry and St. Andre for telling other inmates that Plaintiff reported the inmates for smuggling drugs into the building, which Plaintiff learned of on December 10, 2024; Defendant Ingwerson for telling another inmate that Plaintiff reported the inmate for having drugs in his cell on December 18, 2024; Defendant Dore and St. Andre for reading out loud and in front of other inmates from Plaintiff's complaint and telling inmates their cells were being searched due to Plaintiff's complaints on December 23, 2024; Defendant Ingwerson for announcing yard release was cancelled on December 27, 2024, with the purpose of having Plaintiff "targeted for attack;" and Defendant Butterfield for announcing on the prison PA system that yard was cancelled due to Plaintiff's fear of being attacked "due to snitching" on December 23, 2024.

<u>Eighth Amendment medical needs claims against</u>: Defendant Perry for forcing Plaintiff to place all his weight on an injured leg on November 27, 2024, and against Defendant McPhetridge for undoing the safety straps that secured Plaintiff to a gurney on December 23, 2024.

2.  It is RECOMMENDED that all other claims be dismissed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

Dated:  October 20, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE